UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **SOMERS LAND TRUST, INC. and RIVERKEEPER, INC.**<br><br>　　　　　　**Plaintiffs,**<br><br>v.<br><br>**WILLOW WOOD COUNTRY CLUB**<br><br>　　　　　　**Defendant.** | Case No:<br><br>COMPLAINT |

　　　　Somers Land Trust, Inc. (the "SLT") and Riverkeeper, Inc. ("Riverkeeper") (collectively, "Plaintiffs"), by and through their attorneys, Pace Environmental Litigation Clinic, hereby allege the following against the Willow Wood Country Club, Inc ("Willow Wood" or "Defendant").

## INTRODUCTION

1. Lead pollution is a risk to both terrestrial and aquatic ecosystems, with the added risk of drinking water supplies potentially being contaminated by lead waste in the environment. Improper disposal of lead without the proper permits is a violation of federal law.

2. This matter is a citizen suit brought under the citizen suit enforcement provisions of the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251-388 ("Clean Water Act," or "CWA") and the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901-972 ("RCRA").

3. The Defendant's gun club continuously deposits lead ammunition into the waterways that feed onto Plaintiff SLT's property. The deposited lead contaminates the soil, groundwater and surface waters and poses a risk to drinking water supplies relied on

by communities throughout the lower Hudson Valley.

4. Defendant discharges a pollutant from a point source into a Water of the United States ("WOTUS") without a permit in violation of Section 301 of the CWA. Defendant does not possess, nor has it applied for, a permit from the New York State Department of Environmental Conservation ("DEC"), which has the authority to issue such permits under the CWA.

5. The CWA bars the discharge of pollutants from a point source into a WOTUS by any person. 33 U.S.C. § 1311. Defendant is discharging pollutants (lead shot) from a point source (shooting platforms) into Brown's Brook and wetlands surrounding the brook. Brown's Brook has a continuous surface connection with the adjacent wetlands and multiple waterbodies that constitute WOTUS. These waters flow from SLT's property into the Muscoot and New Croton Reservoirs, which then flow into the Croton River then the Hudson River; all of these waters are WOTUS, which makes Brown's Brook and the surrounding wetlands WOTUS.

6. The Defendant is also disposing hazardous waste in violation of RCRA without the required permits. The levels of lead leaching into the environment around Willow Wood exceeds the regulatory limit, making Willow Wood a hazardous waste facility. Willow Wood has not obtained a permit for hazardous waste disposal in compliance with 42 U.S.C. § 6925, which is required under RCRA.

7. Defendant's ongoing accumulation and migration of toxic lead shot has also created conditions that present an imminent and substantial endangerment to human health and the environment within the meaning of 42 U.S.C. § 6972(a)(1)(B) of RCRA.

**JURISDICTION AND VENUE**

8. This Court has subject matter jurisdiction over the parties and this action pursuant to

Section 505(a)(1) of the CWA, 33 U.S.C. § 1365(a)(1), Section 7002 of RCRA, 42 U.S.C. § 6972, and 28 U.S.C. § 1331.

9. On May 22, 2025, Plaintiffs provided notice of Defendant's violation of the CWA and the RCRA, and of its intention to file suit against the Defendant to: (1) Defendant; (2) the Administrator of the United States Environmental Protection Agency ("EPA"); (3) the Regional Administrator of the EPA Region II; and (4) the Commissioner of DEC, as required by the CWA, 33 U.S.C. § 1365(b)(1)(A), and the corresponding regulations at 40 C.F.R. §§ 135.1-135.3. A true and correct copy of Plaintiffs' notice letter is annexed hereto as Exhibit A and is incorporated by reference.

10. Plaintiffs have complied with the notice requirements under Section 505(b)(1) of the CWA, 33 U.S.C. § 1365(b)(1) and Section 7002(c) of RCRA, 42 U.S.C. § 6972.

11. More than sixty (60) days have passed since the notice letter was served on Defendant, the state and federal agencies.

12. Neither the United States nor the State of New York has commenced or is diligently prosecuting a civil or criminal action to redress the violations alleged in this complaint. CWA § 505(b)(1)(B); 33 U.S.C. § 1365(b)(1)(B); RCRA § 7002(b)(1)(B), 42 U.S.C § 6972.

13. These claims are not barred by any prior administrative action under Section 309(g) of the CWA, 33 U.S.C. § 1319(g) or Section 7002 of RCRA 42 U.S.C § 6928(a).

14. Venue is proper in the Southern District of New York pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), and 28 U.S.C. § 1391(b)(2) because the source of the violations complained of is located, and the acts and omissions giving rise to the claims occurred, within this judicial district.

**PARTIES**

15. Plaintiff SLT is a not-for-profit environmental organization organized under the laws of the state of New York, dedicated to protecting open space in the Town of Somers, NY. SLT's property abuts the Defendant's land, with streams and wetlands that cross between both properties.

16. Plaintiff Riverkeeper is a non-profit organization which is incorporated under the New York Not-For-Profit Corporation Law, and which is dedicated to protecting and restoring the Hudson River and its tributaries and safeguarding drinking water supplies for surrounding communities.

17. Defendant Willow Wood is a corporation under the laws of the State of New York, which owns and operates the shooting range at 551 Union Valley Road in Mahopac, New York.

18. Riverkeeper is a nonprofit whose mission is to maintain the integrity of the Hudson River, its tributaries, and their ecosystems.

19. SLT owns property at a site adjacent to the Defendant's, and members of both plaintiff organizations have visited numerous times to inspect the state of the property and assisting in both maintenance and surveying the land. Members also use the property for recreation as well as conservation.

20. Two years ago, when visiting the property on May 6, 2023, Plaintiffs found discarded ammunition in various parts of the property, such as moss and boulders.

21. Plaintiffs took photos of the ammunition and soil and water samples from the property, which tested positive for high concentrations of lead.

22. Both Plaintiffs also state that there are lead deposits in the local watershed.

23. Over the next six months, Plaintiffs continued to visit the property and continued to

see spent ammunition on and around the property

24. The presence of lead is detrimental to the environmental integrity and Plaintiffs' personal recreational enjoyment of the property and detracts from what would be a pristine piece of nature.

25. An order to stop the depositing of lead onto the property, as well as an order to clean up the lead, would be the remedy that Plaintiffs are seeking.

## STATUTORY AND REGULATORY BACKGROUND

### A. The Clean Water Act

26. The CWA prohibits the discharge of pollutants from a "point source" into the waters of the United States ("WOTUS") without a permit. CWA. 33 U.S.C.§ 301(a); 33 U.S.C.§ 1311.

27. National Pollution Discharge Elimination System ("NPDES") permits are issued by EPA or by States that have been authorized by EPA to act as NPDES permitting authorities, provided that the state permitting program ensures compliance with the procedural and substantive requirements of the CWA. 33 U.S.C.§ 1342(b)(1); 40 C.F.R. § 123.25(a).

28. In New York, the authority to issue NPDES permits is delegated to the DEC. NPDES permits issued by the State are referred to as State Pollutant Discharge Elimination System ("SPDES") permits. A SPDES permit requires dischargers to comply with various limitations.

### B. CWA Citizen Enforcement Suits

29. Under CWA Section 505(a)(1), 33 U.S.C. § 1365(a)(1), any citizen may commence a civil action in federal court on his own behalf against any person who is alleged to be in violation of an "effluent standard or limitation" under the CWA.

30. Such enforcement action under CWA Section 505(a), 33 U.S.C. § 1365(a), includes an action seeking remedies for an unpermitted discharge in violation of Section 301 of the CWA, 33 U.S.C § 1311, as well as for violation of a condition of a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342. *See* CWA Section 505(f), 33 U.S.C. § 1365(f).

31. Declaratory relief in such cases is authorized by 28 U.S.C. §§ 2201–02 (power to issue declaratory relief in case of actual controversy and further necessary relief based on such a declaration).

32. Injunctive relief is authorized by Section 505(a) of the CWA, 33 U.S.C. § 1365(a).

33. Violators of the CWA are also subject to an assessment of civil penalties of up to $64,618 per day per violation for all violations of the CWA occurring after November 2, 2015, and that are assessed on or after January 6, 2023. See 33 U.S.C. §§ 1319(d) and 1365(a) and 40 C.F.R. Part 19.4 (updating statutory civil penalties to adjust for inflation).

### C. Resource Recovery and Conservation Act

34. The purpose of RCRA is to protect human health and the environment from the risks of improper disposal of hazardous materials, such as those which can contaminate soil and water. 42 U.S.C. § 6902.

35. Under RCRA, spent lead shot is a "hazardous waste" because it contains lead, a solid waste, and exhibits toxic characteristics.

36. The discarded lead from shooting activities poses significant risks to human health and the environment.

37. The lead shot discharged from Willow Wood accumulates on Willow Wood's property, as well as on adjacent properties, contaminating soil, surface water and

ground water, and causing substantial environmental harm.

38. Lead can also be a "hazardous waste" under Subtitle C of RCRA if it exhibits the characteristics of toxicity defined under 40 C.F.R § 261.24. Under 42 U.S.C. § 6925, facilities involved in the disposal of hazardous waste must obtain a permit to comply with RCRA.

39. Under RCRA, citizens are authorized to bring actions addressing both permit violations and imminent and substantial endangerment arising from improper management of hazardous waste. Specifically, 42 U.S.C. § 6972(a)(1)(A) allows any citizen to commence a civil action against any person alleged to be in violation of a permit, standard, regulation, condition, requirement, or order under RCRA, including the failure to obtain a required hazardous waste treatment, storage, or disposal permit under 42 U.S.C. § 6925.

40. In addition, 42 U.S.C. § 6972(a)(1)(B) authorizes citizen suits against any person "who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment."

41. Enforcement can take the form of an action seeking remedies for operating an unpermitted disposal facility in violation of Section 7002 of RCRA. 42 U.S.C. § 6925; 42 U.S.C. § 6972(f),

42. Injunctive relief is authorized under Section 7002 of RCRA, 42 U.S.C. § 6972(f).

43. Violators of RCRA are also subject to an assessment of civil penalties of up to $74,943 per day per violation for all violations of RCRA occurring after October 25, 2020, and that are assessed on or after May 22, 2025.

## STATEMENT OF FACTS

### A. **Defendant is Discharging Pollutants into Navigable Waters**

44. Defendant, Willow Wood Country Club, is a corporate entity that owns and operates the shooting range located at 551 Union Valley Road, Mahopac, NY. 10541.

45. Defendant controls the shooting activities that takes place at the shooting range.

46. Defendant's shooting activity is responsible for the discharge of pollutants (spent lead shells) that is deposited on their property and that of SLT.

47. The pollutants, after being shot, contacts with both soil and water.

48. The Defendant's property and SLT's property have wetlands and streams which flow through both properties including Brown's Brook.

49. Brown's Brook and the other streams have a continuous surface connection to the Hudson River making it a WOTUS.

50. The shooting platforms are considered a "point source" under the CWA, therefore Willow Wood requires a SPDES permit for such shooting operations which cause a pollutant to be discharged into navigable waters. 33 U.S.C. § 1362(14).

51. Defendant does not currently possess a SPDES permit nor are they in the process of obtaining one related to the discharge of pollutants from a point source.

### B. **Defendant and SLT's Properties Show Elevated Levels of Lead**

52. Defendant falls in the definition of a "person" under RCRA because it is a corporation under Section 502(5) of the CWA, which defines "person" to include "an individual, corporation, partnership [or] association." 33 U.S.C. § 1362(5)

53. Defendant allows lead shot to accumulate on its property and adjacent lands, including that of SLT's.

54. Lead is a hazardous waste and because of its characteristics is known to pose

significant risks to human health and the environment. 42 U.S.C § 6921(g).

55. SLT had soil and groundwater samples from their property tested for lead contamination.

56. The soil samples show there are levels of lead which exceed EPA's threshold up to 11,800 parts per million ("ppm").

57. Soil sampling of SLT's property shows that there is an elevated level of lead, around 13,000 ppm and 722 ppm.

58. EPA guidelines classify "hazardous" soil-lead levels on a residential property to be, on average, around 200 ppm as the required screening level for residential properties. OFF. OF LAND & EMERGENCY MGMT. NO. 20460, RESIDENTIAL LEAD DIRECTIVE FOR CERCLA SITES AND RCRA HAZARDOUS WASTE CLEANUP PROGRAM FACILITIES (2025)

59. Groundwater samples from SLT's property also show lead levels to be around 81.0 micrograms per liter ("μg/L") to 9.71 μg/L which exceed acute aquatic life criterion for lead in fresh water. (65 μg/L). *National Recommended Water Quality Criteria – Aquatic Life Criteria Table*, United States Environmental Protection Agency, https://www.epa.gov/wqc/national-recommended-water-quality-criteria-aquatic-life-criteria-table.

60. Defendant has allowed spent lead shot to accumulate on its property and adjacent lands, resulting in contamination far exceeding EPA thresholds.

61. Once discharged and left unmanaged, the lead shot ceases to be used for its intended purpose and becomes a "solid waste," and given its toxicity and leachability above regulatory limits a "hazardous waste" under RCRA. *See* 42 U.S.C. §§ 6903(5), 6903(27); 40 C.F.R. § 261.24(b).

### C. Defendant Has Not Obtained a Permit for These Discharges

62. On June 6, 2025, Plaintiffs sent Defendant, via certified mail, the Notice of Intent to Sue as noted above. Attached hereto as Exhibit A.

63. Defendant has not obtained a NPDES permit issued under Section 402 of the CWA or the state-level equivalent SPDES permit issued by the DEC, authorizing the discharge of pollutants from the shooting platforms or other point sources into WOTUS.

64. Defendant has also not obtained a hazardous waste permit under 42 U.S.C. § 6925, allowing deposited lead to accumulate in the soil on theirs and neighboring properties.

65. By permitting this accumulation and migration of lead into soils and surface and groundwaters, Defendant is effectively operating a hazardous-waste disposal site without the required permit under 42 U.S.C § 6925. EPA's Best Management Practices for Lead at Outdoor Shooting Ranges guidance establishes that shooting-range operators are expected to manage and reclaim lead to prevent such contamination. George Mayer et al, *BMP for Lead at Outdoor Shooting Ranges,* Environmental Protection Agency, (Jun. 2005),

    https://19january2021snapshot.epa.gov/sites/static/files/documents/epa_bmp.pdf.

66. Defendant's failure to do so demonstrates non-compliance with industry standards and RCRA's core purpose of safeguarding human health and the environment from improper disposal of hazardous waste.

67. Lead-bearing shot that is discarded or disposed of and is not routinely reclaimed in a manner that prevents contamination, is a solid waste and can meet the regulatory definition of a hazardous waste under Subtitle C of RCRA if it exhibits the

characteristics of toxicity defined in 40 C.F.R. § 261.24.

68. The characteristics of toxicity for lead are defined as an amount at or above the regulatory level of 5.0 milligrams per liter ("mg/l"). 40 C.F.R. § 261.24.

69. The lead levels found in the soil samples taken show, at minimum, are around 721 mg/l, well over the regulatory level.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### Discharge of Pollutants in Violation of the
### CWA (Violations of 33 U.S.C. § 1311)

70. Plaintiff incorporates by reference all preceding paragraphs as if set forth herein.

71. Section 301(a) of the CWA, 33 U.S.C. § 1311(a), provides that the "discharge of any pollutant" by any "person" is unlawful, unless the discharge complies with various enumerated sections of the CWA. Among other things, Section 301(a) prohibits discharges not authorized by a valid NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

72. Section 502(5) of the CWA, 33 U.S.C. § 1362(5), defines "person" to include "an individual, corporation, partnership [or] association."

73. Section 502(12) of the CWA, 33 U.S.C. § 1362(12), defines "discharge of a pollutant" to include "any addition of any pollutant to navigable waters from any point source."

74. Section 502(14) of the CWA, 33 U.S.C. § 1362(14), defines "point source" broadly to include "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged."

75. Section 502(7) of the CWA, 33 U.S.C. § 1362(7), defines "navigable waters" as "the waters of the United States, including the territorial seas."

76. 40 C.F.R. § 122.2 defines "waters of the United States" to include, among other things: (i) all waters which are currently used, were used in the past, or may be susceptible to use in interstate or foreign commerce, including all waters which are subject to the ebb and flow of the tide; (ii) all interstate waters; (iii) tributaries to such waters; (iv) wetlands adjacent to such waters or their tributaries; and (v) all other waters the use, degradation, or destruction of which would affect or could affect interstate or foreign commerce.

77. Under the CWA, 33 U.S.C. § 1311(a) and the implementing regulation found at 40 C.F.R Part 122, facilities that discharge pollutants from a point source into navigable waters must obtain and operate in compliance with a NPDES permit issued under 33 U.S.C. § 1342.

78. Defendant's shooting range includes six groups of four shooting platforms, each used for regular firing of lead ammunition, with one shooting out into the wetlands.

79. Each platform or shooting station, is a discernable, confined, and discrete conveyance from which spent lead shot, a pollutant, is discharged.

80. When shots are fired, the lead pellets are projected into a confined trajectory from a discrete location (the platform) and deposited onto land and into wetlands and groundwater, ultimately entering Brown's Brook, a WOTUS.

81. Each of these shooting platforms would therefore be considered a "point source" under the CWA and would require a SPDES permit to discharge into navigable waters. 33 U.S.C. § 1362(14).

82. Defendant has discharged and continues to discharge lead associated with shooting

12

activities from point sources to waters of the United States.

83. As of the date of the filing of this complaint, Defendant is not complying with the CWA as they have failed to obtain an SPDES permit.

84. Each and every day on which Defendant discharged pollutants associated with shooting activities constitutes a separate and distinct violation of Sections 301 and 402 of the Clean Water Act, 33 U.S.C. §§ 1311 and 1342. Specifically, Defendant has discharged lead shot and other pollutants from point sources, the shooting platforms, into WOTUS without a valid SPDES/NPDES permit every Thursday through Sunday that it has been open for operation for at least the past five years. These violations include, without limitation, the following dates: October 25, 2020; December 21, 2024; December 27–29, 2024; January 2–4, 9–12, 17, 24–26, 30, 2025; February 1–2, 8, 27–28, 2025; March 1–2, 6–9, 14–15, 17, 20–23, 28, 2025. May 16-7, 25-25, 30, 2025; June 1, 6, 13-15, 19-20, 27-29, 2025 July 3-18, 20, 24-27, 31, 2025; August 2-3, 7, 9-10, 14-17, 29-30; September 1, 4-7, 11-12, 14, 25-28; October 2-5, 10-11, 16-17, 19, 23-26; November 1-2 Each of these dates represents an individual and continuing violation of the Clean Water Act for which Defendant is liable. See Notice of Intent to Sue (Exhibit A).

85. Continuing commission of the acts and omissions alleged herein irreparably harms the waters of the State, Plaintiff, and its members, for which harm Plaintiffs have no plain, speedy, or adequate remedy at law.

86. The remedies available at law, such as monetary damages, are inadequate to compensate for the irreparable injury to the waters of the State.

87. The remedy in equity is warranted upon consideration of the balance of hardships between the plaintiff and defendant.

88. The permanent injunction being sought would not harm the public interest.

89. Wherefore, Plaintiff prays for relief as hereinafter set forth.

## SECOND CAUSE OF ACTION
### RCRA Imminent and Substantial Endangerment (42 U.S.C. § 6972(a)(1)(B))

90. Plaintiff incorporates by reference all preceding paragraphs as if set forth herein.

91. RCRA authorizes citizen suits against any person who "has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment," subject to permit and other statutory requirements. 42 U.S.C. § 6972(a)(1)(B).

92. Defendant's sporting clay and shooting operations result in the continuous deposition of spent lead shot and associated contaminants onto the ground surface and into adjacent wetlands, groundwater, and surface waters, including Brown's Brook which flows into the New Croton Reservoir and the Hudson River.

93. The spent lead shot and lead fragments are discarded materials and therefore solid waste under 42 U.S.C. § 6903(5), due to their toxicity, mobility in soil and groundwater, and leachability exceeding hazardous waste thresholds.

94. The Notice of Intent to Sue (Exhibit A) documents the results of soil and groundwater sampling conducted on and adjacent to the SLT property downstream of Defendant's shooting range as well as dates of violations. These samples show significantly elevated lead concentrations that pose an immediate threat to human health and the environment.

95. Soil samples from the SLT property show contained lead levels ranging from 722 ppm to 13,000 ppm, far exceeding the threshold for hazardous classification set by

the EPA of 1,200 ppm. Groundwater samples analyzed using EPA Method 200.8 contained dissolved lead concentrations between 9.71 µg/L and 81.0 µg/L, and total lead concentrations between 77.9 µg/L and 126 µg/L. (Exhibit A). Under EPA guidelines, the acute aquatic life criterion for lead in freshwater is 65 µg/L, and the chronic criterion is 2.5 µg/L at a water hardness of 100 µg/L. The lead concentrations detected in SLT's groundwater samples substantially exceed these benchmarks.

96. By contrast, upgradient samples collected near Willow Wood's entrance (551 Union Valley Road) showed a "not detected" for lead result, confirming that the lead contamination originated from Defendant's downrange shooting areas.

97. These measured concentrations of lead in soil and groundwater are well above EPA's criteria (acute criterion: 65 µg/L and chronic criterion: 2.5 µg/L at hardness 100 µg/L), demonstrating an ongoing and serious threat to aquatic organisms and the integrity of downstream wetlands and water bodies.

98. The contaminated groundwater and soil lie within a hydrologically connected watershed that flows to Brown's Brook, Muscoot Reservoir, New Croton Reservoir, and ultimately the Hudson River. The Hudson River is a critical drinking-water source for millions of residents of the Hudson Valley and New York City.

99. Defendant's failure to prevent the deposition and migration of lead from its facility, to remove existing lead contamination, or to contain the spread of lead-laden soils and sediments, constitutes an ongoing "handling" and "disposal" of solid and hazardous waste within the meaning of RCRA 42 U.S.C. § 6903(3), (29).

100. The imminent and substantial endangerment standard does not require proof of actual harm but only a reasonable prospect that exposure to the waste may present a threat to human health or the environment. Here, however, the measured

contamination levels demonstrate a tangible, existing and ongoing threat.

101. Defendant's proposed or intermittent "lead reclamation" activities, performed at intervals of five to ten years, are insufficient to abate the hazard or prevent continued migration of contaminants into wetlands, groundwater, and surface waters. The self-enforcing nature of Defendant's land management plan to clean up the lead, and lack of monitoring has left, and will continue to leave, contaminated soils and sediments in place for extended periods of time and allow hazardous waste to leach into water resources used by local communities and wildlife.

102. Defendant has therefore contributed to and continues to contribute to the handling, storage, treatment, transportation, and disposal of solid hazardous wastes that may present imminent and substantial endangerment to human health and the environment, in violation of 42 U.S.C. § 6972(a)(1)(B).

103. Plaintiffs SLT and Riverkeeper have suffered injury and will continue to suffer injury from the Defendant's actions, including contamination of soil and groundwater on the SLT property, impairment of wetlands and streams used and enjoyed by SLT and Riverkeeper members, and the threat of further spread of contamination to the New Croton Reservoir system.

### THIRD CAUSE OF ACTION

**Failure to Obtain RCRA Hazardous Waste
Permit (42 U.S.C. § 6925; citizen-suit § 6972)**

104. Plaintiff incorporates by reference all preceding paragraphs as if set forth herein.

105. RCRA requires "each person owning or operating an existing facility or planning to construct a new facility for the treatment, storage, or disposal of hazardous waste identified or listed under this subchapter to have a permit issued." 42 U.S.C. § 6925(a).

106. To obtain a permit, an applicant must submit to the EPA a two-part application.

107. The application must include information about the facility where hazardous waste will be treated, stored, disposed of, or transported to.

108. The application must also make estimates as to the composition, quantities, and concentrations of hazardous waste listed in Subtitle C.

109. Permits are to be set for a fixed term not to exceed 10 years in the case of land disposal facilities, storage facilities, incinerator, or treatment facilities.

110. Defendant is operating a shooting range involved in the disposal of hazardous waste without obtaining a required RCRA permit, thereby violating 42 U.S.C. § 6925.

111. In addition, the Defendant has also knowingly put out a hazardous waste product into the environment and currently is not seeking the required permit, nor are they preventing the lead from leaching into the soil of surrounding properties.

## PRAYER FOR RELIEF

(a) Wherefore, Plaintiff respectfully requests that this Court grant the following relief, as allowed by 33 U.S.C. § 1365(a) and 28 U.S.C. §§ 2201(a) and 2202:

(b) Declare Defendant to have violated, and to be in violation of, the CWA and RCRA as alleged herein;

(c) Enjoin Defendant from discharging pollutants from the shooting range except as authorized by and in compliance with a NPDES permit;

(d) Order Defendant to immediately comply with the CWA and RCRA requirements;

(e) Injunctive relief pursuant to the CWA 33 U.S.C § 1365(a) and RCRA 42

    U.S.C. § 6972(a)(1)(B) restraining Defendant from further discharges of pollutants;

(f) Order Defendant to take appropriate actions to abate the imminent and substantial endangerment to human health and the environment and remediate the harm caused by the violations of the CWA and RCRA to the extent possible;

(g) Order Defendant to pay all relevant civil penalties of up to $25,000 per day per violation for all violations of the CWA occurring after October 25, 2020 and are assessed after May 8, 2025. 33 U.S.C. §§ 1319(d) and 1365(a) and 40 C.F.R. Part 19 (updating statutory civil penalties to adjust for inflation);

(f) Order Defendant to pay the costs of litigation, including Plaintiff's reasonable investigative costs, attorneys', witness, and consultant fees, and other costs, in accordance with Section 505(d) of the CWA, 33 U.S.C. § 1365(d) and under RCRA 42 U.S.C. § 6972(e);

(g) Award any such other and further relief as this Court may deem just and appropriate.

DATED: White Plains, New York on this 17th day of November, 2025.

            Respectfully submitted,

            By: s/ Todd D. Ommen
            Todd Ommen (TO-1340)
            PACE ENVIRONMENTAL LITIGATION CLINIC
            Elisabeth Haub School of Law
            78 N. Broadway
            White Plains, NY 10603
            (914) 422-4343
            tommen@law.pace.edu
            *Attorneys for Plaintiff*