# PACE ENVIRONMENTAL LITIGATION CLINIC

JOHN JAY LEGAL SERVICES, INC.

ELISABETH HAUB SCHOOL OF LAW

78 NORTH BROADWAY

WHITE PLAINS, NEW YORK 10603

PHONE: 914.422.4343

FAX: 914.422.4437

| OF COUNSEL | SUPERVISING ATTORNEY | ADMINISTRATOR |
|---|---|---|
| KARL S. COPLAN | TODD D. OMMEN | JENNIFER RUHLE |

June 6, 2025

**Via Certified Mail, Return Receipt Requested**

ATTN: Managing Agent
Willow Wood Country Club, Inc.
551 Union Valley Road
Mahopac, NY 10541

George J. Calcagnini, Esq.
376 Route 202
Somers, New York 10589
(914) 277-2255
gcalcagnini@aol.com

      Re:    <u>Notice of Violation and Intent to File Suit under the Clean Water Act and the Resource Conservation and Recovery Act</u>

Dear Sir or Madam,

This letter provides notice that Somers Land Trust, Inc. ("SLT" or "Somers Land Trust") and Riverkeeper, Inc. ("Riverkeeper") intend to file suit against Willow Wood Country Club, Inc. ("Willow Wood"), pursuant to section 505 of the federal Clean Water Act ("CWA")[1] and section 7002 of the Resource Conservation and Recovery Act ("RCRA").[2] Willow Wood, located at 551 Union Valley Road, Mahopac, New York 10541, is discharging pollutants into a water of the United States ("WOTUS") without a permit. Additionally, Willow Wood is operating a facility for the disposal of hazardous waste without a permit[3] and contributing to the disposal of solid waste that presents an imminent and substantial endangerment to the environment.[4]

---

[1] 33 U.S.C. § 1365.
[2] 42 U.S.C. § 6972.
[3] 42 U.S.C. § 6925.
[4] 42 U.S.C. § 6972(a)(1)(B).

Somers Land Trust is a non-profit organization incorporated under the New York Not-For-Profit Corporation Law and dedicated to preserving open space in the town of Somers, NY. The wetlands and streams crossing between Somers Land Trust's property, located at 85 Warren Street, Somers, New York 10589, and Willow Wood are a main feature of the northern border of the 85 Warren Street property. The primary issue here is the historical and ongoing deposition of lead into the waterways feeding into Somers Land Trust's property.

Riverkeeper is a non-profit organization incorporated under the New York Not-For-Profit Corporation Law and dedicated to protecting and restoring the Hudson River and its tributaries, safeguarding drinking water supplies for surrounding communities through advocacy rooted in community partnerships, science, and law. The lead pollution from Willow Wood into a perennial stream, locally known as Brown's Brook,[5] directly impacts the water quality of both the New Croton Reservoir and the Hudson River. Because millions of New York residents rely on these waters for drinking water, this contamination directly threatens public health and undermines Riverkeeper's mission to protect and ensure safe drinking water for the communities it serves.

Somers Land Trust and Riverkeeper, as organizations dedicated to protecting the adversely affected ecosystems, intend to file suit in the United States District Court for the Southern District of New York seeking appropriate declaratory and injunctive relief, civil penalties, attorney's fees, remediation of soil and water, and other necessary relief after 90 days[6] of the mailing of this letter per the postmark date.[7]

Somers Land Trust and Riverkeeper intend to take legal action because Willow Wood is discharging a pollutant from a point source into a WOTUS without a permit in violation of Section 301 of the CWA.[8] Further, Willow Wood has not applied for coverage under nor complied with the conditions of a Section 402 individual permit or any other applicable permit. In New York, the Department of Environmental Conservation ("DEC") has been delegated the authority to issue permits,[9] and, as such, issues State Pollutant Discharge Elimination System ("SPDES") permits as the proper Section 402 permit for discharging pollutants into a WOTUS.

Willow Wood is allowing lead to land on SLT's property and other surrounding land, causing contamination of local waters and soils, including waters that drain to drinking water sources. By allowing this accumulation, Willow Wood is also operating a facility for the disposal of hazardous waste without the required permit,[10] a distinct RCRA violation. Willow Wood has also disposed of solid waste on soil and into surface waters that is presenting an imminent and substantial endangerment to the environment subject to remediation under RCRA.[11]

---

[5] This stream is identified on the New York State Department of Environmental Conservation's ("DEC") Environmental Resource Mapper as "Minor Tribs to the New Croton Reservoir *Environmental Resource Mapper*, N.Y. STATE DEP'T OF ENV'T CONSERVATION, https://gisservices.dec.ny.gov/gis/erm/ (last visited Mar. 26, 2025).
[6] 42 U.S.C. § 6972(b)(2)(A)
[7] 40 C.F.R. § 135.2(a)(3)(c) (notice of intent to file suit is deemed to have been served on the postmark date).
[8] 33 U.S.C § 1311(a).
[9] *New York NPDES Permits,* ENV'T PROT. AGENCY, https://www.epa.gov/npdes-permits/new-york-npdes-permits (July 31, 2024).
[10] 42 U.S.C. § 6925.
[11] 42 U.S.C. § 6972(a)(1)(B).

I. CLEAN WATER ACT STANDARDS AND LIMITATIONS ALLEGED TO HAVE BEEN VIOLATED AND ACTIVITIES ALLEGED TO BE VIOLATIONS

A. Willow Wood Country Club is Discharging a Pollutant Through Several Point Sources into a Water of the United States Without a Permit

The CWA prohibits the "discharge of pollutants"[12] through a "point source"[13] into a WOTUS by any "person,"[14] except when allowed by a valid permit.[15] Here, Willow Wood falls under the CWA's definition of "person" because it is a corporation.[16]

Willow Wood's daily shooting activity has caused and continues to cause a "discharge of pollutants," specifically lead shot, from shooting platforms. Willow Wood's shooting range contains six groups of shooting platforms with four shooting platforms in each group.[17] Each shooting platform constitutes an individual "point source"[18] under the CWA.[19] The lead shot lands in Browns Brook and adjacent wetlands on Willow Wood's, SLT's, and adjacent properties, resulting in the contamination of soil and surface water which flows into Brown's Brook. Brown's Brook maintains a continuous surface water connection with the Hudson River.

Violations have occurred every Thursday through Sunday that Willow Wood has been open for business for at least the past five years, and as specifically set forth below.[20] Water from the wetlands on Willow Wood's, SLT's, and adjacent properties flows through Brown's Brook into the Muscoot Reservoir, in turn feeding into the New Croton Reservoir, in turn emptying through the Croton River into the Hudson River, a navigable in fact WOTUS. Because Brown's Brook has a continuous surface connection with the Hudson River, the discharges caused by Willow Wood fall within the authority of the CWA.[21]

B. Willow Wood has not Obtained the Proper Permit for Discharging Pollutants from a Point Source into a Water of the United States, Exceeding Effluent Limitations

To discharge pollutants through a point source into a WOTUS, Willow Wood must have a valid permit.[22] Willow Wood is in the process of obtaining a SPDES general permit for stormwater discharges associated with construction (GP-0-20-001), but this permit does not encompass non-stormwater discharge, such as spent lead shot coming from their individual point sources.[23]

---

[12] 33 U.S.C. § 1362(12).
[13] 33 U.S.C. § 1362(14).
[14] 33 U.S.C. § 1362(5).
[15] *See* 33 U.S.C. §§ 1311(a), 1342.
[16] 33 U.S.C. § 1362(5).
[17] *See* Exhibit A: Mapped point sources.
[18] *See Id*.
[19] *See Long Island Soundkeeper Fund v. N.Y. Athletic Club*, No. 94 Civ. 0436 (RPP), 1996 U.S. Dist. LEXIS 3383, at *10 (S.D.N.Y. Mar. 22, 1996).
[20] 28 U.S.C § 2462.
[21] *Sackett v. EPA*, 598 U.S. 651, 654 (2023).
[22] *See* 33 U.S.C. §§ 1311(a), 1342.
[23] *See* N.Y. STATE DEP'T OF ENV'T CONSERVATION, SPDES GENERAL PERMIT FOR STORMWATER DISCHARGES FROM CONSTRUCTION ACTIVITY 9 (Jan. 29, 2020), https://www.dec.ny.gov/docs/water_pdf/constgp020001.pdf.

Willow Wood has not sought the required SPDES permit issued by DEC, pursuant to Section 402 of the CWA.[24]

## II. WILLOW WOOD IS OPERATING A FACILITY FOR THE DISPOSAL OF HAZARDOUS WASTES WITHOUT A PERMIT

Willow Wood Country Club is violating RCRA due to the improper disposal of spent lead shot on its own and adjacent properties without a permit.[25] Under RCRA, spent lead shot is a "hazardous waste" because it contains lead, a solid waste (in this case, discarded material from community activities[26]) that is a toxic substance posing significant risks to human health and the environment.[27] The lead shot discharged from Willow Wood accumulates on Willow Wood's and adjacent properties, contaminating soil and surface water and causing substantial environmental harm.

Lead shot deposited on land constitutes a statutory solid waste under RCRA.[28] Further, lead can meet the regulatory definition of a hazardous waste under Subtitle C of RCRA if it exhibits the characteristics of toxicity defined in 40 C.F.R. § 261.24. Lead's potential to leach into the environment at levels exceeding the Toxicity Characteristic Leaching Procedure testing threshold of 5 mg/L supports this classification.[29] As such, Willow Wood's property functions as a hazardous waste disposal facility.[30] Under 42 U.S.C. § 6925, facilities involved in the disposal of hazardous waste must obtain a permit in order to operate.[31] Willow Wood has not obtained the necessary permit essential to ensure compliance with RCRA's requirements for protecting sensitive ecosystems and preventing contamination.

RCRA's purpose is to safeguard human health and the environment from improper disposal of hazardous materials, particularly those that can contaminate land and water resources.[32] Willow Wood's continued discharge of lead shot with no oversight poses substantial risk to local ecosystems, particularly within the sensitive wetlands on SLT property. Compliance with RCRA, including obtaining the required hazardous waste permit under § 6925, is critical to mitigate further contamination and hazardous impacts on SLT property.

---

[24] 33 U.S.C. § 1342.
[25] 42 U.S.C. § 6925.
[26] 42 U.S.C. § 6903(27).
[27] 42 U.S.C § 6903(5).
[28] 42 U.S.C. § 6903(27); *see Conn. Coastal Fishermen's Ass'n v. Remington Arms Co.,* 989 F.2d 1305, 1316 (2d Cir. 1993).
[29] 40 C.F.R. § 261.24(b).
[30] Past decisions concerning the status of lead shot as a regulatory hazardous waste subject to RCRA Treatment, Waste, and Disposal facility permitting, such as *Conn. Coastal Fishermen's Ass'n*, 989 F.2d 1305, and *Cordiano v. Metacon Gun Club*, Inc., 575 F.3d 199 (2d Cir. 2009), relied on *Chevron* deference. Following *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024), those portions of these cases are not controlling, as recent case law reaffirms the court's role in independently applying RCRA's broad statutory language.
[31] 42 U.S.C. § 6925(a).
[32] *See* 42 U.S.C. § 6902.

### III. WILLOW WOOD'S ACTIVITIES ARE PRESENTING AN IMMINENT AND SUBSTANTIAL ENDANGERMENT UNDER RCRA

RCRA provides for citizen suits against any "person,"[33] including any past or present owner or operator of a disposal facility, "who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment."[34] Willow Wood falls under RCRA's definition of "person" because it is a corporation.[35]

Willow Wood has caused spent lead shot to land and accumulate on its own and adjacent properties, including the SLT property. If such waste is recovered or reclaimed regularly, no solid or hazardous waste would be present. Willow Wood has proposed to reclaim downrange lead shot every five to ten years, but only for the lead shot found on the western portions of its property. The proposed permit includes lead reclamation from the wetlands on Willow Wood's property. SLT has notified Willow Wood of the lead shot found on SLT property. Willow Wood applied for a lead reclamation permit on December 31, 2024, but indicated its intent to withdraw this permit on March 4, 2025. Noticing parties are unaware of the status of that permit application, but until and unless reclaimed, the lead shot left on SLT property is discarded waste resulting from community activities and falls within the RCRA category of "solid waste."[36]

Soil samples taken from SLT property revealed lead levels between 13,000 ppm and 722 ppm. The Environmental Protection Agency ("EPA") classifies soil levels to be hazardous at an average of 1,200 ppm.[37] The groundwater samples taken from SLT property show lead levels between 126 µg/L and 77.9 µg/L when tested using "EPA Method 200.8: Determination of Trace Elements in Waters and Wastes by Inductively Coupled Plasma-Mass Spectrometry,"[38] and between 81.0 µg/L and 9.71 µg/L when tested using the method "Lead, Dissolved by EPA 200.8."[39] EPA's National Recommended Water Quality Criteria, developed pursuant to Section 304(a) of the CWA,[40] establishes guidance for protective thresholds of lead concentrations in surface waters to safeguard aquatic life. States and tribes must adopt water quality criteria under 40 C.F.R. § 131.11 to maintain compliance with the CWA. Based on EPA's guidelines, the acute aquatic life criterion for lead in fresh water is 65 µg/L and the chronic criterion is 2.5 µg/L for a water hardness of 100 mg/L.[41] SLT's groundwater test results significantly exceed these thresholds.

In upgradient samples taken from 551 Union Valley Road to establish background levels, lead is "not detected" when using either of the testing methods discussed above. Because lead has only

---

[33] 42 U.S.C. § 6903(15).
[34] 42 U.S.C. § 6972(a)(1)(B).
[35] 42 U.S.C. § 6903(15).
[36] 42 U.S.C. § 6903(27).
[37] 40 C.F.R. § 745.65(c).
[38] U.S. EPA. 1994. "Method 200.8: Determination of Trace Elements in Waters and Wastes by Inductively Coupled Plasma-Mass Spectrometry," Revision 5.4. Cincinnati, OH.
[39] *Id*.
[40] 33 U.S.C. § 1314(a).
[41] *National Recommended Water Quality Criteria - Aquatic Life Criteria Table*, ENV'T PROT. AGENCY, https://www.epa.gov/wqc/national-recommended-water-quality-criteria-aquatic-life-criteria-table#table (Last visited April 7, 2025).

been detected in the groundwater samples taken downgradient from Willow Wood, the evidence is clear that the lead levels are not an innate part of the environment but instead result from the deposition and disposal of Willow Wood's spent lead shot.

Willow Wood is discharging lead into the environment, resulting in wetland soil levels that exceed the EPA's hazardous threshold for soil levels by up to 11,800 ppm and groundwater levels that significantly surpass EPA's National Recommended Water Quality Criteria by as much as 61 µg/L. Consequently, Willow Wood has created an imminent and substantial endangerment to the environment under RCRA.[42]

### IV. PERSONS RESPONSIBLE FOR ALLEGED VIOLATIONS

Willow Wood is the "person"[43] responsible for the violations alleged in this Notice. Willow Wood has operational control of the day-to-day shooting activities at its site. Therefore, Willow Wood is responsible for its lead discharge and must comply with CWA and RCRA requirements.

### V. LOCATION OF THE ALLEGED VIOLATION

The violations alleged in this Notice have occurred and continue to occur from point sources at Willow Wood, located at 551 Union Valley Road, Mahopac, New York 10541. Each shooting platform point source, depicted in Exhibit A[44], scatters spent lead shot, discharging lead directly into Brown's Brook, its surrounding wetland,[45] and surrounding soil areas. Specifically, spent lead shot from these point sources enters Brown's Brook and its surrounding wetland at and around coordinate points 41.3505867, -73.70151333333334. Lead from the spent lead shot is additionally entering the soil and groundwater of the surrounding area.[46]

### VI. DATES OF THE VIOLATION

Every day Willow Wood has discharged lead without a permit, in violation of Section 301(a) of the CWA, is a separate violation.[47] Specifically, Willow Wood has discharged lead without a permit every Thursday through Sunday that it was open for operation for at least the last five years. These dates of violation specifically include, without limitation, the following dates:

| October 25, 2020 | December 21, 2024 | December 27, 2024 | December 28, 2024 |
| --- | --- | --- | --- |
| December 29, 2024 | January 2, 2025 | January 3, 2025 | January 4, 2025 |
| January 9, 2025 | January 10, 2025 | January 11, 2025 | January 12, 2025 |
| January 17, 2025 | January 24, 2025 | January 25, 2025 | January 26, 2025 |
| January 30, 2025 | February 1, 2025 | February 2, 2025 | February 8, 2025 |
| February 27, 2025 | February 28, 2025 | March 1, 2025 | March 2, 2025 |

---

[42] 42 U.S.C. § 6972(a)(1)(B).
[43] 33 U.S.C. § 1362(5); 42 U.S.C. § 6903(15).
[44] 33 U.S.C. § 1362(14); see Exhibit A: Mapped point sources
[45] *Environmental Resource Mapper, supra* note 5.
[46] *See United Anglers v. Kaiser Sand & Gravel Co.*, No. c 95-2066 CW, 1995 U.S. Dist. LEXIS 22449, at *4 (N.D. Cal. Sept. 27, 1995) (holding that "A reasonably specific indication of the area and the time-frame will thus suffice" as proper notice for a CWA claim).
[47] 33 U.S.C. § 1319(d).

| March 6, 2025 | March 7, 2025 | March 8, 2025 | March 9, 2025 |
| March 14, 2025 | March 15, 2025 | March 17, 2025 | March 20, 2025 |
| March 21, 2025 | March 22, 2025 | March 23, 2025 | March 28, 2025 |
| March 30, 2025 | April 3, 2025 | April 4, 2025 | April 10, 2025 |
| April 11, 2025 | April 12, 2025 | April 13, 2025 | April 17, 2025 |
| April 18, 2025 | April 24, 2025 | April 25, 2025 | April 27, 2025 |
| May 1, 2025 | May 2, 2025 | May 3, 2025 | May 8, 2025 |
| May 10, 2025 | May 11, 2025 | May 16, 2025 | May 17, 2025 |
| May 25, 2025 | May 26, 2025 | May 30, 2025 | June 1, 2025 |

If Willow Wood seeks permit coverage after receiving this letter but fails to fully comply with the requirements of an individual permit, each day during which Willow Wood claims coverage under a SPDES permit will constitute a separate day of violation concerning each unmet condition.

Willow Wood is liable for the above-described violations occurring prior to the date of this letter and for every day after the date of this letter that these violations continue. In addition to the violations set forth above, this Notice covers all violations of the CWA evidenced by information that becomes available to us after the date of the Notice of Intent to File Suit.[48] These violations are ongoing and, barring full compliance with the permitting requirements of the CWA and RCRA, these violations will continue.

Willow Wood is also liable under RCRA, without regard to negligence or fault, where the plain language of the statute does not impose a negligence standard but confers liability on any person contributing to activity that presents imminent and substantial endangerment to health or environment.[49] Each day in which Willow Wood has left solid waste on Willow Wood property constitutes a separate violation.[50]

## VII.  RELIEF REQUESTED

First, Somers Land Trust and Riverkeeper seek declaratory relief and injunctive relief to prevent further violations of the CWA, pursuant to Section 505(a) and (d), and such other relief as permitted by law. Somers Land Trust and Riverkeeper seek an order from the Court requiring Willow Wood to obtain SPDES permit coverage. Somers Land Trust and Riverkeeper seek injunctive relief pertaining to the lead contamination of SLT's property and its continuous effect on Brown's Brook.

Second, Somers Land Trust and Riverkeeper seek declaratory relief and injunctive relief, to address Willow Wood's improper handling and disposal of hazardous waste and to mitigate the imminent and substantial endangerment posed to health and the environment, along with any

---

[48] *See Pub. Int. Rsch. Grp. v. Hercules, Inc.*, 50 F.3d 1239, 1248-49 (3d Cir. 1995) (stating that notice that adequately identifies specific violations to a potential defendant also covers repeated and related violations that the plaintiff learns of later); see Exhibit B: Dates of Violations.
[49] 42 U.S.C. § 6973.
[50] 42 U.S.C. § 6928.

7

other relief permitted by law.[51] Somers Land Trust and Riverkeeper seek injunctive relief for remediation of the lead contamination of SLT's property and the continuing effect of the lead contamination on Willow Wood's and adjacent properties and on Brown's Brook. Somers Land Trust and Riverkeeper will also seek an order from the Court requiring Willow Wood to obtain a permit for the operation of a facility for the disposal of hazardous waste as required by RCRA.[52]

Third, pursuant to Section 309(d) of the CWA, each separate violation of the CWA subjects Willow Wood to a civil penalty.[53] The maximum civil penalty for violations of the CWA has been adjusted to account for inflation.[54] For violations occurring after November 2, 2015, the maximum penalty is $66,712[55] per day for each violation.[56] Somers Land Trust and Riverkeeper will seek the full penalties allowed by law.

Fourth, Somers Land Trust and Riverkeeper will pursue civil penalties under Section 3008(g) of RCRA. Each day of violation constitutes a separate violation.[57] Under 40 C.F.R. § 19.4, the maximum penalty for violations of RCRA has been adjusted for inflation. For violations occurring after November 2, 2015, the maximum penalty is $90,702[58] per violation.[59] Somers Land Trust and Riverkeeper will seek the full penalties allowed by law.

Fifth and lastly, pursuant to section 505(d) of the CWA and under RCRA section 7002(e), Somers Land Trust and Riverkeeper will seek recovery of litigation fees and costs (including reasonable attorney and expert witness fees) associated with this matter.

PERSONS GIVING NOTICE

The full name, address, and telephone number of the persons giving notice are as follows:

Somers Land Trust, Inc.
Attn: Michael Barnhart & Lauretta Jones
PO Box 248,
Somers, NY 10589
Tel (914) 338-8758

Riverkeeper, Inc.
Attn: Mike Dulong
20 Secor Road
Ossining, NY 10562
Tel (914) 478-4501

---

[51] 42 U.S.C. § 6972(a)(1)(A) and (B).
[52] 42 U.S.C. § 6925.
[53] 33 U.S.C. § 1319(d).
[54] 40 C.F.R. § 19.4 (Adjustment of Civil Monetary Penalty for Inflation).
[55] *Id.*
[56] 33 U.S.C. § 1319(d).
[57] 42 U.S.C. § 6928(g).
[58] *See* 40 C.F.R. § 19.4 (Adjustment of Civil Monetary Penalty for Inflation).
[59] 42 U.S.C. § 6928(g).

**VIII.**     IDENTIFICATION OF COUNSEL

Somers Land Trust and Riverkeeper are represented by legal counsel in this matter. The name, address, and telephone number of Somers Land Trust's and Riverkeeper's attorneys are:

Todd Ommen
Pace Environmental Litigation Clinic, Inc.
Elisabeth Haub School of Law
78 North Broadway
White Plains, NY 10603
Tel (914) 422-4343

**IX.** CONCLUSION

The foregoing provides more than sufficient information to permit Willow Wood to identify the specific standard, limitation, or order alleged to have been violated,[60] the activity alleged to constitute a violation, the location of the alleged violation, the person, or persons, responsible for the alleged violation, the date or dates of such violation[61] and the full name, address, and telephone number of the person giving notice.[62]

          Sincerely,

          Todd Ommen
          Managing Attorney

          Amanda Moore
          Legal Intern

---

[60] 40 C.F.R. § 135.3(a).
[61] 40 C.F.R. § 135.3(b).
[62] 40 C.F.R. § 135.3(c).

cc:

Lee Zeldin
Administrator, U.S. Environmental Protection Agency
Office of the Administrator
Mail Code 1101A
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460
Zeldin.Lee@epa.gov

Michael Martucci
Regional Administrator for the EPA's Region 2
290 Broadway
New York, NY 10007-1866

Amanda Lefton
Acting Commissioner for the New York State Department of Environmental Conservation
625 Broadway
Albany, NY 12233-1010

Walter T. Mosley
New York Secretary of State as registered agent for Willow Wood Country Club
One Commerce Plaza
99 Washington Avenue
Albany, NY 12231

# Exhibit A



Figure 3: 2021 Wetland Aerial
Willow Wood
Town of Carmel, Putnam County, NY
Source: Putnam County GIS